**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| Plaintiff | * |
| v. | *  Crim. No. 02-214(SEC) |
| SUSONI VELEZ DE CASTRO, JR. | * |
| Defendant | * |

**ORDER**

This case comes before the Court for a determination of Defendant's competency to stand trial. A competency hearing was held on September 19, 2005. After reviewing the evidence presented at said hearing, counsel's arguments, and the applicable law, we find that Defendant is competent to stand trial.

**Procedural Background**

At a status conference held on July 10, 2002, Defendant's previous counsel, Attorney José Blanco-Torres, expressed his misgivings regarding his client's competency and requested that he be evaluated as soon as possible so that it could be determined whether Defendant was competent to stand trial and assist in his defense (Docket # 139). Then, on July 12, 2002, the Government requested that Defendant undergo a formal psychiatric/mental evaluation (Docket # 134). On even date, the Court ordered that a psychiatric/mental evaluation be made to determine: (1) whether Defendant is competent to stand trial and (2) Defendant's mental condition at the time of the commission of the offense charged in the Indictment up to, and including, the date of his arrest on June 4, 2002, pursuant to Title 18 U.S.C. § 4241(a) & (b) and Title 18 U.S.C. § 4242, respectively (Docket # 135). The Court further ordered that said psychiatric/mental evaluation be made at the Federal Detention Center Facility located in Miami, Florida (FDC Miami) forthwith.

On December 3, 2002 the Warden of FDC Miami informed the undersigned that the competency and insanity evaluation was completed (Government's Exhibit 4). The forensic report was prepared by Dr. Rodolfo A. Buigas. As part of the examination, and as basis for

**Criminal No. 02-214(SEC)**                                                                2
_____

said report, Defendant underwent approximately eleven (11) hours of psychological testing and clinical interviews by FDC Miami's psychology staff. The evaluation also included laboratory studies, a physical examination, a review of legal documentation pertaining to Defendant's case, VA Hospital records, interviews with Defendant's father and sister, recorded telephone conversations, and information obtained from other collateral sources, as well as observation of Defendant for a period exceeding forty-five (45) days during the time that he was housed at FDC Miami.

Dr. Buigas concluded that Defendant "appears to be malingering psychiatric and cognitive problems due to his perception that he might avoid entirely, or receive diminished repercussions for his alleged criminal behavior" (Government's Exhibit 4 at p. 10). Dr. Buigas further opined that while it was possible that Defendant suffered from a genuine mental illness, he "was not suffering from a mental disease at the time of the alleged offense" that would have affected "his ability to appreciate the nature and quality of the wrongfulness of his acts." (Government's Exhibit 4 at p. 9). In sum, the forensic report evidences that Defendant is both competent to stand trial and understood the wrongfulness of his acts at the time of the alleged offense.

Then, at a status conference held on March 26, 2003, Defendant's counsel, Attorney Blanco-Torres, requested that a second mental examination be completed by an expert of their selection (Docket # 279). The Court granted Defendant's unopposed request (Docket # 279). Subsequently, on April 17, 2004 Dr. Carol M. Romey evaluated Defendant's competence to stand trial (Joint Exhibit I). Dr. Romey concluded that Defendant "does not fulfill any of the clinical criteria associated with competence to stand trial"(Joint Exhibit I at p. 15). She further concluded that "it appears that the present charges may have occurred within the time frame of early onset of dementia which would have direct applicability to criminal responsibility at the time of the commission of the alleged acts" (Joint Exhibit I at p. 15). Dr. Romey based her conclusions on a three hour session at MDC Guaynabo during which she interviewed Defendant and administered various psychological tests. She also

**Criminal No. 02-214(SEC)** 3
_____

reviewed Dr. Buiga's forensic evaluation.

Then, at a status conference held on October 4, 2004, the parties discussed the two inconsistent evaluations and, after discussing in detail the alternatives with the Government and Defendant's current counsel, Attorney Enrique Vélez-Rodríguez, the Court decided that the best and most just course of action would be to send Defendant to the Butner Federal Correctional Facility located in North Carolina (FCI Butner) for a complete mental and psychiatric examination (Docket # 576). The Government proceeded to formally request a third and final psychiatric/mental evaluation of Defendant (Docket # 579). The Court then ordered that the third and final psychiatric/mental evaluation be made to determine whether Defendant is competent to stand trial as well as assess Defendant's mental condition at the time of the commission of the offense charged in the Indictment up to and including the date of his arrest on June 4, 2002, pursuant to Title 18 U.S.C. § 4252(a) & (b) and Title 18 U.S.C. § 4242, respectively. Defendant was then transferred to FCI Butner.

Defendant was housed at Butner for over (4) months. During that time, Defendant was interviewed and administered psychological tests for a total of six (6) formal meetings totaling 5.5 hours. The evaluation was conducted by Dr. Dawn Graney. Aside from her observations during the interviews and test results, Dr. Graney considered, *inter alia*, the two previous Reports, and various collateral sources such as investigative reports and monitored phone calls. Defendant was also given a physical exam. In her case formulation, Dr. Graney concluded that a diagnosis of Schizophrenia, Residual Type was appropriate. Nonetheless, although she did not find that Defendant was malingering at present time, Dr. Graney agreed with Dr. Buigas in that Defendant was competent to stand trial and that his behavior at the time of the arrest "suggested the was not suffering from a mental disease or defect such that he was unable to appreciate the nature and quality or wrongfulness of his actions" (Government's Exhibit 2 at p. 18). On the specific issue of competence to stand trial, Dr. Graney noted in her report that Defendant accurately reported the role of his attorney, the prosecutor, and the judge and jury and that he understood the possible verdict outcomes, to

**Criminal No. 02-214(SEC)**                                                                                                          4
_____

wit, guilty, not guilty, and not guilty by reason of insanity (Government's Exhibit 2 at p. 16). Dr. Graney further documented that Defendant expressed willingness to work with his attorney and assist in his own defense and denied having any problems understanding or communicating with his attorney (Government's Exhibit 2 at p. 16). With respect to Dr. Romey's findings, Dr. Graney expressly disagreed with the dementia diagnosis, indicating that Dr. Romey apparently did not have access to Defendant's prior mental treatment and history of schizophrenia as she did not refer to it in her report.

Finally, on August 17, 2005, Defendant's counsel informed the Court that the parties had engaged in potential plea negotiations and, in order to protect Defendant's due process rights and guarantee his participation in the negotiations, Defendant's attorney requested a competency hearing for the purpose of determining Defendant's capacity to understand the legal proceedings and to help counsel in an able manner (Docket # 662). The Court granted Defendant's request (Docket # 664) and a competency hearing was held on September 19, 2005 (Docket # 674). The Government presented the testimony of Dr. Graney from FCI Butner. Dr. Ada Rivera from MDC Guaynabo testified on behalf of the defense. Dr. Graney is a forensic expert while Dr. Rivera is not.

**Applicable Law and Analysis**

**Competency to stand trial**

The test for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). Section 4241(b) of Title 18 dictates that a determination of mental competency to stand trial shall be made "by the preponderance of the evidence." 18 U.S.C. § 4241(b). Defendant carries the burden of proving, by a preponderance of the evidence, that he is incompetent to stand trial. Cooper v. Oklahoma, 517 U.S. 348 (1996)("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."); 18 U.S.C. § 4241.

**Criminal No. 02-214(SEC)**                                                                                                   5
_____

In this case, there are two comprehensive forensic evaluations (Dr. Buigas from FDC Miami and Dr. Graney from FCI Butner) which concluded that Defendant is competent to stand trial. There is also a contradictory three hour evaluation by Dr. Romey concluding the opposite. Finally, there is the testimony of Dr. Rivera from MDC Guaynabo who attested to Defendants' illness and limitations. This testimony as well as Dr. Romey's findings were directly controverted by Defendant's behavior while at FCI Butner, where he enjoyed certain liberties. While at FCI Butner, Defendant independently checked appointment listings and made it to appointments without the need for reminders and/or assistance, with the exception of the first interview. For non-scheduled interviews, Defendant was notified on the same date of the interview of the time and made it to the interview without assistance or reminders. While at FCI Butner, Defendant "demonstrated little difficulty independently maneuvering the open compound. He was seen at the institutional dining hall, recreation yard, and chapel, and he attended medical and mental health appointments with no reminders." (Government's Exhibit 2 at p. 7).

> The FDC Miami report documented the same inconsistencies, noting that Defendant:
>
> At times presented with monosyllabic speech in his responses, but was more expressive in his speech to nonpsychology personnel. His inconsistency was apparent even with Psychology Staff, as on other occasions, he presented with sustained, coherent and rational speech. Furthermore, he presented as partially oriented to his environment when interacting with psychology staff, but was fully oriented in a phone call to his family. In fact, the defendant explained where he was, routine and emergency visiting procedures, past correspondence, and how to obtain the exact address of the prison facility. He had no difficulties with receptive comprehension.

(Government's Exhibit 4 at p. 5). The FDC Miami report also reveals that collateral sources suggested that Defendant told an inmate from another correctional facility that he was pretending to be mentally ill (Government's Exhibit 4 at p. 10). Furthermore, the Dr. Rivera's testimony and Dr. Romey's findings are also inconsistent with Defendant's behavior as surveilled prior to the charges being brought, especially his trip to from JFK New York to Romania, to where he flew independently and remained for about a month and returned without assistance. This trip evidenced Defendant's ability to plan ahead, purchase tickets, remember

essential information, and maneuver an international airport. As stated by Dr. Graney, "such action takes planning, mental and behavioral organization, goal-directed behavior, motivation, and ability to recall essential information" and "could not be accomplished if an individual were experiencing acute psychotic symptoms, or even severe mood symptoms" (Government's Exhibit 2 at p. 18). Defendant was also living alone at the time of his arrest and was seen driving his car, using valet parking, shopping for groceries, visiting acquaintances, etc. As noted by Dr. Graney, "these goal-oriented behaviors require planning, coherent thinking, a degree of long-term recall (e.g., knowing driving directions to desired locations), and some degree of social skill (e.g., requesting valet parking)" (Government's Exhibit 2 at p. 17). Additionally, his visits to acquaintances evidenced he had social contact.

Dr. Romey's findings depict Defendant as extremely disabled. Specifically, the results of the tests administered by Dr. Romey placed Defendant in the 1% rank, or "Extremely Low," which would impede him from performing many of the actions that he was observed carrying out and in fact capable of. As testified by Dr. Graney, someone with that level of functioning would be severely disabled and would not be able to communicate, bathe himself, and would need assistance for everything. Defendant's behavior is equally inconsistent with Dr. Rivera's observations at MDC Guaynabo. Specifically, Dr. Rivera testified that Defendant's memory was impaired as to past, recent and immediate events and that he was only oriented in person and not in time or place or circumstance. Again, these observations are inconsistent with Defendant's behavior at less restrictive environments, such as that at FDC Miami and FCI Butner and the fact that he lived alone prior to arrest. Indeed, Dr. Rivera expressed that she was surprised by Dr. Graney's testimony and acknowledged that she understood Defendant to require constant monitoring. Finally, and central to the issue at hand, Dr. Rivera did not assess Defendant's competency to stand trial.

These inconsistencies, together with the malingering diagnosis, lead us to conclude that the most recent FCI Butner evaluation, Dr. Graney's, depicts a more complete and accurate picture of Defendant's competency. See United States v. General, 278 F.3d 389, 398 (4th Cir.

**Criminal No. 02-214(SEC)**                                                                                               7
_____

2002)(finding that the Butner report "is entitled to significant weight because it is the most recent and comprehensive evaluation" of the defendant's competency). Both the FCI Butner and FDC Miami evaluations benefit from the observation of Defendant, in a non-restrictive environment, over an extended period of time.

With respect to the second prong of the test, understanding of the criminal proceedings, in his interviews with Dr. Graney Defendant responded properly to questions of the roles played by his attorney, the prosecutor, the judge, and the jury as well as of the possible outcomes. Thus, Defendant demonstrated his understanding of the criminal proceedings. Defendant also expressed to Dr. Graney his willingness to assist his attorney in defending his case. Furthermore, Dr. Graney reported that Defendant denied having any problems understanding or communicating with his attorney (Government's Exhibit 2 at p. 16).

Thus, giving more weight to the FDC Miami and FCI Butner evaluations, we find that Defendant has not met his burden of establishing beyond a preponderance of the evidence that he is incompetent to stand trial. The Court acknowledges that Defendant is suffering from a mental illness. Although all evaluators diagnosed an illness, they differed as to diagnosis, varying from Psychotic Disorder, Not Otherwise Specified (FDC Miami) to Schizophrenia, Residual Type (FCI Butner) to Dementia Not Otherwise Specified With Depressive Mood (Dr. Romey). However, "[a] person is not rendered incompetent merely because he is mentally ill to some degree or is emotionally unstable. Rather, competency goes to the ability to participate effectively in one's own case." United States v. Horowitz, 360 F. Supp. 772, 777 (E.D. Pa. 1973)(citations omitted). See Swisher v. United States, 237 F. Supp. 921, 931 (W.D. Mo. 1965), *aff'd* 354 F,2d 472 (highlighting that "mere proof of the fact that petitioner may have been in fact mentally ill at the time of trial does not establish that he was then mentally incompetent to stand trial"). Accordingly, we find Defendant competent to stand trial.

**SO ORDERED.**
In San Juan, Puerto Rico, this 30th day of September, 2005.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge